IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| VERNON J. SKELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:08-CV-047 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 11] will be denied, and plaintiff's motion for summary judgment [doc. 9] will be granted to the extent it seeks remand under sentence four of § 405(g).[1]

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

I.

*Procedural History*

Plaintiff applied for benefits in July 2005, claiming to be disabled by back pain and carpal tunnel syndrome. [Tr. 52, 59, 71]. He alleges a disability onset date of September 1, 2004. [Tr. 52, 59]. The application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on August 21, 2007.

On August 31, 2007, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the severe impairments of "degenerative disc disease with history of low back pain and bilateral carpal tunnel syndrome," but that those conditions are not equal, individually or in combination, to any impairment listed by the Commissioner. [Tr. 16, 18]. The ALJ further concluded that plaintiff retains the residual functional capacity ("RFC") "to perform light work with no repetitive gripping and with the option to sit or stand." [Tr. 18]. Relying on vocational expert testimony, the ALJ found that a significant number of jobs exist in the national and regional economies that plaintiff can perform. [Tr. 21]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review by the Commissioner's Appeals Council. [Tr. 4]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff was born in 1960. [Tr. 52, 59]. His past relevant employment is as a construction laborer. [Tr. 72]. He reports a history of alcoholism and a significant number of domestic violence, alcohol-, and marijuana-related arrests. [Tr. 136, 180, 182].

In addition to back pain and carpal tunnel syndrome, plaintiff also alleges depression, numbness in both arms, and pain radiating into his left leg. [Tr. 89, 97]. Plaintiff reports that he is barely able to walk and that he cannot perform even the most basic of tasks, such as showering and getting in and out of bed, without assistance. [Tr. 97, 101]. In sum, plaintiff contends that he "can't do anything." [Tr. 102].

Plaintiff also alleges that he is unable to afford medical care, medication, or even electricity for his home. [Tr. 92, 134, 136, 166, 226-28, 235]. For example, plaintiff told a consultative examiner in December 2005 that, for financial reasons, he has never sought treatment for his purportedly disabling carpal tunnel syndrome and back pain. [Tr. 136]. Plaintiff can, however, afford a pack of cigarettes per day and can also afford, for at least fifteen months following his alleged disability onset date, a daily six-pack of beer. [Tr. 136, 176, 180].

3

III.

*Analysis*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

4

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[2] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

---

[2] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

A. <u>Remand</u>

On behalf of the Commissioner, a Physical RFC Assessment was completed in January 2006 by nonexamining source Anita Johnson. In material part, Ms. Johnson opined that plaintiff can engage in fingering on no more than a frequent basis. [Tr. 141, 145].

As plaintiff correctly points out, the ALJ noted the existence of Ms. Johnson's opinion [Tr. 17] but did not include her opined fingering limitation in either his RFC conclusion or the hypotheticals presented to the vocational expert at the administrative hearing. The ALJ accepted a limitation on repetitive gripping as opined by a consultative examiner, but did not explain why Ms. Johnson's opinion regarding fingering was given no weight.[3] This was error, and the matter must therefore be remanded to the Commissioner for further evaluation. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) ("the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").[4]

---

[3] The Commissioner does not argue, and the court cannot conclude, that gripping and fingering are the same thing.

[4] Ms. Johnson also opined that various postural activities would be limited to no more than a frequent or occasional basis. [Tr. 140]. Plaintiff does not, however, raise any challenge pertaining to that portion of Ms. Johnson's assessment [doc. 10., p. 13], and any such argument is accordingly waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)

6

On remand, the ALJ should also evaluate the effect, if any, of plaintiff's cervical disc disease. [Tr. 155]. In addition, the ALJ *shall* reconsider his finding that plaintiff's "report of actual activities including . . . *watching television* . . . indicates that he is able to get about in a manner which is not significantly restricted." [Tr. 20] (emphasis added).

> . . . As the undersigned has previously noted, the Commissioner's position regarding television viewing is patently absurd.
>
>> In passing, the court observes that it is again presented with a Social Security appeal in which the ALJ found that "activities including . . . watching television [and] listening to the radio . . . indicate[] that [the claimant] is able to get about in a manner which is not significantly restricted." [Tr. 17]. The court must restate its utter dismay that the Commissioner considers "activities" such as watching television and listening to the radio to be evidence of vocational ability. *See, e.g., Russell v. Barnhart*, No. 3:05-cv-362, slip op. at 5 (E.D. Tenn. Feb. 15, 2006); *Ezell v. Barnhart*, No. 3:03-cv-421, slip op. at 11 (E.D. Tenn. June 25, 2004). The court again hopes that it has been presented with this unsupportable theory for the final time.
>
> *O'Dell v. Barnhart*, No. 3:06-cv-119, slip op. at 8 n.4 (E.D. Tenn. Jan. 4, 2007).
>
> It remains inconceivable to this court that a claimant's "ability" to engage in the "activity" of watching television can be cited as evidence of vocational capacity. . . .

*Wagers v. Astrue*, No. 2:07-CV-011, 2008 WL 183224, at *4-5 (E.D. Tenn. Jan. 17, 2008).

This matter will therefore be remanded to the Commissioner so that the ALJ may cure the defects cited herein. The court will not require an additional administrative hearing or the taking of additional evidence. As will be discussed below, the present

7

administrative record appears to be more than sufficient to resolve plaintiff's claim.

B. Reversal

To the extent that plaintiff asks this court to award benefits rather than remanding his case, the request will be denied. A reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id*.

Plaintiff relies primarily on two reports submitted by chiropractor Dan Levesque, who saw plaintiff on April 5, 2006, and February 15, 2007. Dr. Levesque's April 2006 report notes positive results on myriad chiropractic testing and also relies heavily on plaintiff's subjective complaints. In material part, Dr. Levesque expressed his dramatic conclusions as follows:

> I have examined him and he is currently under my care as of 4.5.06. Mr. Skelton suffers from extreme, constant low back pain that radiates into his left hip and leg. It is exacerbated by any type of exertion whatsoever and prohibits most daily living activities (including work).
>
> His low back and leg pain and weakness prohibits him from sitting longer than 1 hour at a time or standing longer than 15-20 minutes continuously. He cannot bend, kneel or squat, or lift anything over 10 lbs. (and not repetitively) from the floor. It is these restrictions that have disabled Mr. Skelton from working or finding employment.

He also suffers from bilateral arm pain, shoulder pain and weakness, and bilateral hand pain, numbness, tingling and loss of grip (worse in his left hand). These symptoms also severely limit Mr. Skelton's ability to work.

. . .

It is my professional opinion that Mr. Skelton has lost the ability to work or provide for himself financially or otherwise because of his physical disabilities at this current time. I am currently helping him document these physical restrictions while he is undergoing treatment in order to establish a case for social security disability assistance. . . .

. . .

. . . Mr. Skelton has tried to work for as long as possible but his low back pain and weakness simply will not allow it anymore. He is to the point where any exertion whatsoever increases his pain and totally disables him for 3-4 days. There was many times [sic] where he simply couldn't go anymore and missed days of work because of it. Now he cannot work at all and requires family members to help him with his daily living abilities.

. . .

. . . His antalgic position and walking with a limp shows an initial presentation of someone with a weak back or injured leg and this also keeps him from being hired or keeping a job. His pain also keeps him from getting normal sleep; sometimes he goes days without sleep and then collapses and finally rests properly. . . . Now he has gotten to the point that he . . . has lost all health insurance and now cannot afford to get the proper treatment to fix his problems/keep him from getting worse.

. . .

. . . the longer he waits for proper treatment of his spinal condition, the more damage and permanenet [sic] disability he will accumulate. Unfortunately, his spinal condition will not allow him to stand for more than 15-20 minutes or his body may collapse with weakness and pain . . . . He cannot sit longer than 1 hour without writhing in pain . . . . I have treated him over a short period of time and concluded there is very little I can do for him; he has not responded to any of my treatments as of yet. It is my professional opinion that Mr.

Skelton has currently lost the ability to provide for himself . . . and should qualify for total disability assistance as soon as possible.

. . . Overall, Mr. Skelton recieved [sic] very little if any relief from the care we provided, however unfortunately, [sic] he has an amount of permanent spinal damage that will require chiropractic care for the rest of his life to avoid more problems.

[Tr. 161, 164-66, 170].[5]

The ALJ gave "little weight" to Dr. Levesque's views, citing: the limited treatment history; an undue reliance on plaintiff's subjective complaints; the possibility that plaintiff did not give maximum effort on examination; and inconsistency with the remaining evidence of record. [Tr. 20]. Substantial evidence supports that conclusion. In fact, the

---

[5] In an undated report following plaintiff's February 2007 examination, Dr. Levesque similarly wrote in part:

Mr. Skelton has the same complaints/symptoms he did when he started chiropractic care with us roughly nine months ago. He still cannot work physically due to extreme fatigue, pain and numbness and tingling problems. He initially consulted with us on April 4, 2006 and is still under our care. He gets some relief from our treatments however temporary, but not enough to make a significant change in his condition so he can work effectively and consistently. . . .

. . .

. . . The patient's progress has been slower than expected. Currently, Mr. Skelton is totally disabled and cannot perform any normal work functions. There are possibilities that a percentage of his condition may be temporary, however only time and continued treatment will tell how much better/stronger he'll get. I do not anticipate he will be able to return to normal work functions until at least another 6 months to a year of treatment/healing time and this is questionable. . . .

. . . The patient's prognosis at this time is poor, meaning his case is complicated, but continued care is recommended . . . .

[Tr. 202, 204].

10

court cannot recall being presented with a medical source assessment more grossly out of step with its supporting documentation.

Although Dr. Levesque refers to x-rays and "advanced" disc disease, there are no x-ray reports in his file. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Dr. Levesque opined that plaintiff is disabled in part by depression, but he is a chiropractor rather than a mental health professional. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). Dr. Levesque opined that plaintiff is disabled in part by *a history of* "chronic fatigue and chronic pain" although he had only examined him once. *See* 20 C.F.R. §§ 404.1527(d)(2)-(3), 416.927(d)(2)-(3). Although Dr. Levesque characterized plaintiff's circumstance as virtually hopeless due to a loss of "all health insurance," contemporaneous pharmacy records show that plaintiff did in fact have insurance at that time. [Tr. 166, 198-201]. Although Dr. Levesque purported to be *treating* plaintiff, his file documents a mere two evaluations spaced more than ten months apart.

In addition, Dr. Levesque's dire opinions are inconsistent with the remaining administrative record. *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). Five days after initially seeing chiropractor Levesque, plaintiff sought care from nurse practitioner Catherine Raff. Plaintiff was described as being in no acute distress. [Tr. 175]. Ms. Raff noted full strength in all extremities, and carpal tunnel and straight leg raise testing were both negative. [Tr. 175]. Strikingly, although plaintiff reported extraordinary limitations to Dr. Levesque ("requires family members to help him with his daily living abilities. . . . He requires help

11

with even the simplest daily living chores") only days before [Tr. 164-66], Ms. Raff noted that plaintiff "stays at home and takes care of his sister in law, who has Down's Syndrome." [Tr. 176].

Two days prior to his 2007 visit with Dr. Levesque, plaintiff again appeared at Ms. Raff's office. Plaintiff exhibited some spinal tenderness but had full muscle strength. [Tr. 211]. Both plaintiff and a person noted to be his step-niece sought treatment that day. As correctly observed by the ALJ [Tr. 17], Ms. Raff wrote, "*He appears comfortable while he was doing his step-niece's visit. When it was his turn for the appointment he appeared to change in comfort level.*" [Tr. 211] (emphasis added).

Dr. Samuel Breeding performed a consultative examination in December 2005. Plaintiff appeared to be in no acute distress. [Tr. 136]. Range of motion was full except for the lumbar spine. [Tr. 137]. Grip strength was full, and carpal tunnel testing was inconclusive. [Tr. 137]. Dr. Breeding opined that plaintiff can work at a level similar to the ALJ's RFC finding. [Tr. 137]. The ALJ did not err in crediting Dr. Breeding's assessment.

Substantial evidence also supports the ALJ's questioning of plaintiff's credibility. In addition to the revelations contained in Ms. Raff's file, as noted above plaintiff alleges that he is unable to afford medical care, medication, or even electricity. He can, however, inexplicably afford a pack of cigarettes per day and, for at least fifteen months following his alleged disability onset date, a six-pack of beer per day. Plaintiff's style of life is completely inconsistent with that of a person who truly suffers the degree of limitation

12

alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

For these reasons, the court is not satisfied that "all essential factual issues have been resolved [or that] the record adequately establishes [] plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. Benefits will not be awarded by this reviewing court at this time. *See id*.

IV.

*Conclusion*

The final decision of the Commissioner will be reversed and remanded for a reevaluation consistent with this opinion. It is again stressed that rehearing and additional evidence will not be required by the court. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan        
United States District Judge